EASTERN DIST.
*January*, 1832.

PRALL
*vs.*
PEET'S CURATOR.

### PRALL *vs.* PEET'S CURATOR.

APPEAL FROM THE COURT OF THE FIRST DISTRICT.

The curator of a vacant succession is the proper representative of the heirs, and a judgment in his capacity of curator is as valid, and efficacious against the succession, as if rendered against the heirs.

Courts of Probate have exclusive jurisdiction in all cases of passive debts of a succession administered by a curator, executor, &c.

The curator of the succession of a deceased partner is to cause an inventory and appraisement to be made of the portion of the deceased in the partnership.

When made a party to a suit pending before the partner's death, against the partners, the curator cannot require the transfer of the suit to the Court of Probates.

When goods on which a party has a privilege are sequestered and sold by consent, he has a privilege on the proceeds.

The act of 1830 repealing that of 1829 relative to juries in the parishes of Orleans and Jefferson, revives those in force before the repealed act.

EASTERN DIST.
*January,* 1832.

PRALL
*vs.*
PEET'S CURATOR.

The act of 1827, which requires the sheriff to summon not less than thirty-six jurors, does not inhibit him from summoning seventy-two.

Co-defendants are not entitled to separate trials. The Code of Practice, articles 181–2, does not give them a right thereto ; and the articles of the Civil Code, 2080–1, relate only to *joint,* and not to joint and several obligors.

The article 3484 of the Civil Code should, by analogy, be extended to cases in which the plaintiff erred in the manner of bringing his suit.

A contract fraudulent *ab initio* on the part of the buyer, is not translative of property, and the owner may claim it as if it had never been sold.

Where a suit is against persons bound *in solido,* according to the provisions of law which define the obligations of commercial partners, the judgment carries with it solidarity, even although it be not expressed.

The record of a suit brought by either party against a third, is admissible evidence to establish *rem ipsam,* i. e. that such a suit was brought and prosecuted to judgment.

*Mathews, J.* delivered the opinion of the court.

The object of this suit is to recover the value of certain goods or merchandise, which came into the hands of the sheriff of the parish and city of New-Orleans, and was by him sold by the consent of parties interested in them. The petition contains allegations of gross fraud in the manner by which they were obtained from the plaintiff by one Bernard M. Devit, acting for his firm of Robert & B. M. Devit, under semblance of a purchase which was made with a view to cheat and defraud the seller—the purchasers having neither the means or intention of ever paying for them. It is further alleged, that William A. Peet, who afterwards became possessed of these goods, in the name of his firm, composed of himself, James Peet and N. D. Peet, under a simulated and fraudulent sale from the vendees; was conversant of, and a partaker in the fraud practised by them on the original vendor. On these and other allegations in the petition, the plaintiff prays to have the sales (thus made) declared null ; for judgment against William Peet & Co. to the amount of the price

PRALL
vs.
PEET'S CURATOR.

for which his goods were sold, and damages, and also for general relief.

The cause was tried by a jury in the court below, who found a verdict for the plaintiff against William A. Peet & Co. for five thousand nine hundred and sixty-one dollars and ninety-three cents, and directed that this amount, when paid, should be credited on a judgment which he had previously obtained against R. & B. M. Devit for the same debt in a suit to recover from them, as purchasers, the price of the goods now claimed from William A. Peet & Co. Judgment was rendered in pursuance of this verdict. Previous to the verdict and judgment, William A. Peet had died, and G. W. Morgan was appointed curator of his estate; against whom, and the surviving co-partners, the cause was prosecuted; and the curator appealed from the judgment rendered as above stated.

In examining this case we shall consider the allegations of fraud against the defendants, as established by the verdict of the jury. In truth, they are well sustained by the evidence. The only task left for us to perform, is an inquiry into the validity of the objections made by the counsel for the appellant as delineated in his points, against the legality of the proceedings in the court below.

The curator of a vacant succession is the proper representative of the heirs, and a judgment against him in his capacity of curator is as valid and efficacious against the succession as if rendered against the heirs.

The points filed on the part of the appellant are many, and the objections to the legality of the proceedings various. The first relates to an alleged error in making a party to the suit after the death of William A. Peet to represent him. Morgan, who was appointed curator to his estate, became a party defendant with the surviving partners. It does not appear that the intestate left any heirs in the state, and his succession, so far as it was found within the jurisdiction of the Court of Probates of the Parish and City of New-Orleans, seems to have been placed under the administration of this defendant as curator of a vacant estate. Having the management of a succession thus situated, the curator is the proper person to defend the interest of the heirs (all of whom are necessarily absent in order to give to it the character of vacant) in suits brought against it, and judgments rendered against a curator of this description, are as valid and effica-

cious as if they had been rendered against the heirs them-
selves. *C. P. art.* 122. If, then, Morgan would have been the
proper person against whom to proceed in the commencement
of a suit, it is clear that he was rightfully made a party to
represent the intestate who died pending the present action.

The second and third points contain objections to the juris-
diction of the District Court in proceeding against the curator ;
and his counsel insists that the cause, so far as it relates to
the succession of William A. Peet, should have been trans-
ferred to the Court of Probates, in pursuance of a motion
which was made for that purpose, &c. In support of the
claim to have the cause removed to the Court of Probates,
reliance is placed on the articles of the Code of Practice
which establish the jurisdiction of courts of this kind, and
grant to them exclusive cognizance of cases relating to the
administration of successions and their final settlement. The
article 924, which enumerates the exclusive powers belong- Courts of pro-
ing to our Probate Courts, grants as one the right to decide bates have exclu-
sive jurisdiction
on claims for money which are brought against successions in all cases of
administered by curators, testamentary executors or adminis- passive debts of
a succession ad-
trators, &c. ministered by a
curator, execu-
By succeeding articles of this code, the liquidation and tor, &c.
payment of debts owing by successions and final adjustment
thereof, are submitted to these officers under the direction and
orders of the courts from which they may have derived their
offices and authority. It must be admitted as a general rule,
that these courts, have conclusive jurisdiction of claims, made
in the ordinary mode of pursuit, against successions, to recover
debts, where the successions are administered by curators,
executors, or other administrators, who receive their appoint-
ments from such courts. It is contended, however, that the
present case presents an exception to this general rule. In
its commencement, the District Court was the only proper
tribunal, before which it could be brought, as the parties,
defendants, were all then living, and that court being once
legally seized of jurisdiction, it was rightfully retained until
judgment. This suit, as we have already seen, was brought
against two partnerships, and the individuals of each made

parties. Whilst it was pending, a partner of one of the firms died who was afterwards represented by a curator, and a judgment rendered against all the partners of this firm. So long as any of these defendants survived, the entire cause could not have been legally transferred to the Court of Probates, and it could not have been separated without great inconvenience and additional expense, if such a course of proceeding would have been legal. Being a commercial partnership the obligations of the partners were joint and several, they were sued jointly, and judgment obtained against them all, which must be considered as a judgment *in solido*, for which the partnership funds are liable to make payment, as well as the individual property of each partner. The funds in the hands of the sheriff, which were sequestered by a prayer to that effect in the petition, were either the property of the plaintiff, or that of William A. Peet & Co., if this money belonged to the former, it made no part of the succession of William A: Peet, to be administered, and if it was the property of Peet & Co., then the curator of one of the partners, had no right to hold possession of it against the will of his co-partners. It is true that the survivors of a partnership, on claiming the administration of the portion of the property in the concern, which belonged to the deceased partner, would be bound to give security, and one year only is allowed to complete such administration, and make a settlement of the partnership concerns. *See Louisiana Code, arts.* 1131—34. These rules relate to the administration of a vacant estate and are applicable to the present case, except that the surviving partners are not present in the state, to claim the privilege accorded to them by law, nor has it been claimed for them. But we induce from these provisions of the code, as a general principle, that the portion of a deceased partner is not *ipso facto*, to be withdrawn from the partnership funds, in consequence of his death, when he has no heirs present to assume the administration of his succession. The duties of a curator in such a situation, are to cause an inventory and estimate to be made of the portion of the deceased in the partnership, and to watch over the administration of the

survivors, but the share of the deceased, clearly forms a part of the joint property subjected to the payment of partnership debts.

As a consequence of the general principle induced from the rules above cited, from the impossibility of transferring the entire cause to the Court of Probates, and from the great inconvenience and expense which would have resulted by dividing it, and removing one part to another tribunal, allowing that it might have been legally done, which is doubtful, we conclude that the judge *a quo* acted correctly in retaining jurisdiction of the whole case.

The fourth point contains an objection to the sequestration which was ordered of the funds in the hands of the sheriff, founded on a bill of exceptions taken to the opinion of the judge *a quo* overruling a motion to have them released. It was money which was sequestered, the proceeds from the sale of goods, which were formerly claimed by the plaintiff, and sold while in dispute under his consent and that of other claimants. He then claimed a lien and privilege on the goods and he now claims the money as belonging to him, in consequence of the property which produced it being his, or a privilege on it as vendor of the merchandise, for which it was obtained. It may certainly be considered, as the representative of the merchandise for which it was received, as the price under the sale made by consent, for it cannot be supposed that the plaintiff intended to place himself in a worse situation in relation to the property claimed by his agreement, to have it sold. And as he now claims a privilege on the proceeds, he has a right to have them sequestered, according to the 9*th sec. of the act passed in* 1826, to amend the *Code of Practice.*

We have already stated that this cause was tried by a jury. Previous to swearing the jurors the counsel for the defendants made two challenges to the jury; one to the array, the other to a person whose name was found on the panel drawn and summoned by the sheriff, and designated on said panel by the number 69. The decisions of the judge below in relation to these objections to the jury were excepted to, and are brought before this court on the fifth point filed by the appel-

EASTERN DIST.
*January,* 1832.

PRALL
*vs.*
FEET'S CURATOR.

When made a party to a suit pending against the partners, the curator cannot require the transfer of the suit to the Court of Probates.

When goods on which a party has a privilege are sequestered and sold by consent, he has a privilege on the proceeds.

EASTERN DIST.
January, 1832.

PRALL
vs.
PEET'S CURATOR.

lant. The challenge to the array was made on the ground that the sheriff had no right by law to summon more than thirty-six jurors, and that among that number, as first stated on the list, the name of the third juror summoned could not be found on the original lists made out by the sheriffs of the parishes of Orleans and Jefferson.

The act of 1830 repealing that of 1829 relative to juries in the parishes of Orleans and Jefferson revives those in force before the repealed act.

The act of 1830, which repeals the law of 1829 relative to obtaining juries for the courts of the First Judicial District, revives the laws on that subject, when even in existence previous to the act which was repealed. The last of those which were revived, is the act of 1827, by which the sheriff is required to summon not less than thirty-six jurors to serve for a term of the court. It is evident, from a fair construction of this act, that the officer is not limited in summoning to the number of thirty-six. He may exceed it in the exercise of a proper discretion, which he seems to have done in the present instance, by summoning seventy-two jurors, and the whole panel was not vitiated by the excess beyond thirty-six; neither was it by a mistake in the name of one of the jurors summoned, whilst the names of thirty-six proper persons remained on it. According to this view of the subject any one of the seventy-two persons summoned might have been lawfully sworn to try causes during the term for which they were summoned; and consequently the challenges, both to the array and the poll, were properly overruled by the judge a quo.

The act of 1827 which requires the sheriff to summon not less than 36 jurors, does not inhibit him from summoning 72.

Co-defendants are not entitled to separate trials. The Code of Practice articles 181–182, does not give them a right thereto; and the articles of the Civil Code 2080–2081, relate only to joint and not to joint and several obligors.

The sixth point has reference to exceptions taken to the opinion of the judge below, by which he refused to allow the curator of William A. Peet to have a trial separate from his co-defendants. We know of no rules of practice which authorise as many separate trials of a cause as there may be defendants to the suit. It certainly would be very inconvenient in the administration of justice; and such a course of proceeding is not in any manner sanctioned by the acticles of the Code of Practice cited on behalf of the appellants. See the arts. 181–2. The articles of the La. Code, 2080–1, cited in support of this point, relate to joint obligors alone; not to persons bound in solido, and even such defendants do not

appear to have a right to separate trials, although separate judgments may be rendered against them.

The prescription of one year, and that of five years, were plead to the action in the court below. The former is alone relied on in this court. The simulated and fraudulent sale from Devit to Peet & Co. is alleged to have taken place on the 25th of March, 1826, and the present action was not commenced until the 10th of July, 1827. In support of the prescription of one year the appellant's counsel invokes the *arts.* 1982 *and* 3501 *of the Louisiana Code.* The first fixes the limitation within which an action must be commenced, to annul a contract by which a preference may have been given by an insolvent debtor to one of his creditors, in satisfaction of a just debt. The second relates to suits for damages on account of injurious words, those caused by slaves or animals, or resulting from *quasi* offences, &c. The article 1982 is that more particularly applicable to the present case, and if the prescription thereon established, has not been interrupted by any previous proceeding on the part of the plaintiff in this suit, a doubt might arise as to its effects on his present claim. Yet by the art. 1989, the period of prescription commences to run from the date of the judgment which the creditor may obtain against his debtor, whose fraudulent sale of property is sought to be annulled, and this provision does probably prevent the prescription relied on by the appellant. But we are of opinion that it was interrupted by the intervention of the present plaintiff in the case of Peet & Co. *vs.* Morgan. The intervenor in that case alleged fraud, and consequently nullity in the sale of the goods (for which he now sues) from Devit to Peet. But by a decision of the Supreme Court, made in June term, 1827, it was determined that he could not obtain redress in that mode of pursuit; and the cause being sent back to the District Court, he dismissed his petition of intervention and brought this suit, in which both vendor and vendee are made defendants. According to article 3484, prescription is interrupted by a demand, whether suit has been brought before a competent court or not. A mistake as to the tribunal, it seems, will not destroy the effect of a suit in

The article 3484 of the Civil Code should by analogy be extended to cases in which the plaintiff erred in the manner of bringing his suit.

the interruption of prescription. And by analogy it ought not when the error occurs in the manner of prosecuting such suit, in consequence of which it may be dismissed.

It is, however, declared in the article of the code immediately succeeding, that if a plaintiff after having made his demand, abandons or discontinues it, the interruption shall be considered as having never happened. This article, considered in relation to that preceding, must be viewed as having reference only to cases of voluntary abandonment or discontinuance. But the suit by intervention, in the case of Peet & Co. vs. Morgan, was not withdrawn until a decision of the Supreme Court had manifested to the intervenor that it was vain and useless for him to continue further proceedings in that mode.

The objection made to the plaintiff's right to maintain this action, as contained in the eighth point filed by the appellant, necessarily leads us into a slight investigation of the merits of the cause. The petition contains allegations of fraud in the sale from Prall, the plaintiff, to Devit, and in that made by the latter to Peet, sufficient to authorise a court of justice to consider them both void, *ab initio*, and not translative of property from the original vendor, who consequently had a right to reclaim his property as if it had never been sold. And these allegations being verified by the verdict of the jury, none of the defendants have a right to avail themselves of the pretended term of payment accorded to the first vendee. The correctness of this doctrine is established by a decision made during the last June term of this court, in the case of *Gasquet & Co. vs. Johnston & Brewster*, intervening party. The article 1988 of the code, cited by the appellant's counsel, is, therefore, inapplicable to the case.

A contract fraudulent *ab initio* on the part of the buyer, is not translative of property and the owner may claim it, as if it had never been sold.

The ninth point it will be more proper to consider after having determined whether the judgment of the District Court is to be affirmed, modified or totally reversed; and the tenth being abandoned, we proceed to an examination of the eleventh.

The error assigned on this point, is that the judgment is not *in solido*, against William A. Peet & Co. It is true that

there are no expressions in the verdict or judgment which condemn these defendants jointly and severally. Yet as the suit is against persons bound *in solido*, according to the provisions of law which define the obligations arising on the contracts of commercial partners, the judgment ought to be considered as decreeing a fulfilment of their obligations. That it is virtually one *in solido*, we have already expressed our opinion in the discussion of the second and third points.

The assertions contained in the twelfth point, viz. that Morgan, the sheriff, became proprietor of the merchandise now in dispute, in consequence of the judgment which William A. Peet & Co. obtained against him for having seized them as the property of Devit, are based on the assumption, that they were really the property of the plaintiffs in that suit. But the validity of their title is one of the principal matters now in contest; and any judgment in a suit between other persons, cannot affect the claim of the present plaintiff, who was not a party to it at the time the judgment was rendered. It is *res inter alios acta.*

In the thirteenth and fourteenth points, which relate to the record of a suit, No. 7018, adjudged in the District Court, there is apparent contradiction. This piece of evidence the appellant's counsel first attempts to use against the appellee, and afterwards denies its admissibility. We think it was properly received in evidence, to show that such a suit was prosecuted to judgment. It was brought by the present plaintiff against Devit, and commenced by attachment. Its institution and final judgment is stated in the petition of this case. But what effect that document ought to have on the plaintiff's present claim, is not very readily perceived. We are, however, of opinion, that his attempt to obtain redress for the injury done to him by the fraudulent manner in which his goods were taken from him in that action, is no bar to the suit which he is now prosecuting.

The fifteenth point contains an allegation of error, in the judgment of the court below, in consequence of having been rendered in general terms against the defendants, Peet & Co., whereas, the only judgment that could have been legally

EASTERN DIST.
January, 1832.

PRALL
*vs.*
PEET'S CURATOR.

Where a suit is against persons bound *in solido*—according to the provisions of law which define the obligations of commercial partners, the judgment carries with it solidarity even although it be not expressed.

The record of a suit brought by either party against a third is admissible evidence to establish *rem ipsam i. e.* that such a suit was brought and prosecuted to judgment.

given, is a decree to annul the sale made by Devit to Peet. This objection has been obviated in the examination of the eighth point where it is stated, that from the allegations and proof in the case, the jury and judge below, were authorised to consider both contracts of sale, from Prall to Devit and from the latter to Peet, as void in their origin and not translative of property.

The circumstance of Peet & Co., having obtained a judgment against Morgan, the sheriff, on account of the seizure and detention of the same goods, the price of which was sequestered in his hands, in the present suit, is urged as an objection to the recovery of these funds from him, by the plaintiff; and the counsel of the appellant, in his sixteenth point, seems to consider the judgment rendered in this case, as one based on the same cause of action, which formed the principal matter of dispute in the suit against him, where Peet & Co. were plaintiffs. It would certainly operate injuriously on Morgan, to have the proceeds of these goods taken from him, as belonging to the present plaintiff, and still leave him liable to pay Peet & Co.'s judgment. The way in which this possible injustice to the appellant may be obviated, is not very clear. We cannot interfere with the judgment obtained against him at the instance of Peet & Co., for that is *res judicata*, and being a proceeding between different parties, and on different claims, the judgment therein rendered, is no bar to the present action. The most proper remedy for this possible injury, is perhaps that proposed by the counsel of the appellee, in his brief of argument, which is, that the judgment in the present case should be assigned to Morgan, on his paying to the plaintiff, the proceeds arising from the sale of the property in litigation, and which are sequestered in his hands. It is however, clear that the judgment in that case is no bar to this suit.

The objection to the judgment, contained in the seventeenth point, is founded on the *art. 1978 of the Louisiana Code.* This article relates to the action given to creditors in avoidance of contracts, and its incidents, and the section in which it is found, treats of the contracts which may be avoided by this

action, and declares that "if the fraud consisted merely in an endeavor to obtain a preference over other creditors, for the securing or payment of a just debt, and in such case, the party shall only lose the advantage, endeavored to be secured by such contract, and shall be re-imbursed, what he may have given or paid, &c." In the present case, there is no evidence that William A. Peet ever gave or paid any thing for the merchandise, pretended to be purchased from Devit, except a bill of exchange on his house in New-York, which has not been paid and which cannot be enforced against the drawer, having been negotiated after due, and consequently subjected to all equitable objections to its payment, in the hands of the holder, and by decreeing the goods for which it was given to the plaintiff, in this case, the consideration for which it was made fails, and no recovery can be had on it. But in all events, the appellee ought not to be compelled to seek a paper thus put in circulation, and over which he cannot be supposed to have any control, more especially as the person who put it in circulation, is charged with gross fraud in the whole transaction, and this charge established by the verdict.

The eighteenth and last objection to the correctness of the judgment appealed from, is, that there is no judgment against the Devits for the price which they promised to pay for these goods to the plaintiff. The petition contains an allegation, that judgment had been obtained against these defendants in another suit, and the record of that judgment, was produced in evidence. In addition to this, both the fraudulent vendors and vendees, are made parties to this suit, but as the claim against the Devits, had been personally liquidated by a judgment, there was no necessity to obtain any further liquidation.

We conclude that the judgment of the court below, is substantially just and correct, according to the facts and law of the case, but it requires some modifications in relation to the appellant as curator of William A. Peet's estate, and in relation to his responsibility under the judgment which Peet & Co. obtained against him. It must consequently be reversed, in order to make these modifications.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court, be avoided, reversed and annulled. And proceeding here to give such judgment, as ought, in our opinion, to have been there rendered. It is further ordered, that the plaintiff and appellee, do recover from William A. Peet & Co., composed of the said William A. Peet, represented by G. W. Morgan, his curator, James M. Peet, and Munson S. Peet, the sum of four thousand nine hundred and sixty-one dollars and ninety-three cents. And this judgment when paid, to be so much in satisfaction of the judgment in the suit of *William T. Prall* vs. *R. & B. M. Devit,* No. 7018, of the suits in the District Court of the Second Judicial District. And it is further ordered, that the judgment here rendered, be sent to the Court of Probates, to be liquidated and paid according to its costs, out of the funds in the hands of the curator of the succession of William A. Peet. And that when these funds shall be paid over to the plaintiff and appellee, he shall subrogate G. W. Morgan to his rights on this judgment, in order to secure the latter against the effects of the judgment, which William A. Peet & Co., obtained against him, on account of the goods which formed the principal matter of contest, in the present suit. The appellant and defendants to pay the costs of the court below, and those of the appeal to be borne by the appellee.

SAME CASE.

*Mathews, J.* delivered the opinion of the court.

After judgment was rendered in this case by the Supreme Court, the appellee filed his petition, praying for a modification of the decree. The cause has since been examined in reference to the written arguments of counsel in the case ; and we have come to the conclusion that the charge or modification claimed by the plaintiff ought to be made. The judgment pronounced in his favor (as may be seen by referring to our former opinion) is mainly bound on the ground that

the property (or its proceeds) forming the subject of litigation in the present suit, never legally passed from the appellee to William A. Peet & Co.   The transaction by which it came into the possession of the latter, was so tainted with fraud as to give no legal title to either of the purchasers.

The inconsequence of that part of our judgment which transferred the fund adjudged to the plaintiff, to the Court of Probates, to be administered by Peet's curator, under the jurisdiction of that court, from the premises assumed in the decision, did not entirely escape our observation.   The property had, however, been so long and so often considered as belonging to William A. Peet & Co., that it was conceived that it, or its proceeds, might well be subjected to the administration of the curator as constituting a part of William A. Peet's succession.   In this there was error, and the judgment must be accordingly modified.   In truth, these funds have never come to the possession of Morgan as curator of Peet's estate.   They remain sequestered in his hands, as sheriff, or in the hands of the coroner ; and in pursuance of the opinion heretofore expressed in this case, ought not to pass into the power and administration of said curator, because they have been virtually decreed to be the property of Prall.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be avoided, reversed and annulled.   And proceeding here to give such judgment as ought in our opinion to have been there rendered, it is further ordered, adjudged and decreed, that the plaintiff and appellee do recover from William A. Peet & Co., composed of the said William A. Peet, represented by George W. Morgan, his curator, James M. Peet and Munson S. Peet, the sum of five thousand nine hundred and sixty-one dollars and ninety-three cents, being the proceeds of the goods mentioned in the petition ; and that said proceeds, now in the hands of the sheriff, George W. Morgan, as sequestered in this suit, be by him, or by the coroner, paid to the plaintiff, and this sum, when paid, to be so much in satisfaction of the judgment in the suit of

William F. Prall, *vs.* R. & B. M. Devit, number 7018 of the suits of the District Court of the First Judicial District.

And it is further ordered, that when these proceeds shall have been paid over to the plaintiff and appellee, he shall subrogate George W. Morgan to his rights in this judgment, in order to secure the said George W. Morgan against the effects of a judgment which William A. Peet & Co. obtained against him on account of the goods which formed the principal matter of contest in the present suit. The appellants and defendants to pay the costs of the court below, and those of the appeal to be borne by the appellee.